IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DOUGLAS MCGREW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-232-RJD |
| | ) | |
| QUAUY TRAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

**DALY, Magistrate Judge:[1]**

Plaintiff Douglas McGrew, an inmate of the Illinois Department of Corrections who is currently incarcerated at Big Muddy River Correctional Center ("Big Muddy"), brought this civil action pursuant to 42 U.S.C. §1983 for the violation of his constitutional rights. (Doc. 1). Plaintiff claimed that Defendant Quang Nguong Tran, DMD, made two unsuccessful attempts to extract Plaintiff's upper left wisdom tooth, causing Plaintiff's tooth to break and Plaintiff to suffer pain. (Docs. 1 & 7). Following threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on an Eighth Amendment claim of deliberate indifference against Defendant Tran as well as against the Warden of Big Muddy for purposes of injunctive relief. (Doc. 7). The Warden was thereafter dismissed after the Court's determination that Plaintiff's request for injunctive relief had been rendered moot. (Docs. 32 & 38).

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 27).

On September 2, 2025, Defendant filed the Motion for Summary Judgment (Doc. 42) and a memorandum in support thereof (Doc. 43). Plaintiff opposed the motion on September 18, 2025, (Doc. 45), and Defendant replied (Doc. 49). For the reasons explained below, Defendant's motion is **GRANTED**, and this case is being **DISMISSED with prejudice**.

## Factual Background

At all times relevant to this case, Plaintiff was incarcerated at Big Muddy.[2] (Doc. 43, ¶ 1). On April 27, 2023, Plaintiff was seen by Dr. Karanbir Sandhu for a limited exam of his left upper wisdom tooth. Dr. Sandhu noted that the tooth had erupted but had no redness, abscess, or swelling. Extraction was indicated and scheduled for May 8, 2023. (*Id.* at ¶ 3). Tooth eruption is the process by which teeth emerge from the gums into the mouth. (*Id.* at ¶ 4). Dr. Tran was not a dentist at Big Muddy River Correctional Center, but he was providing dental services there on occasion and as needed. (*Id.* at ¶ 32). Plaintiff did not show up for Dr. Tran's extraction procedure on May 8, 2023, due to a phone consultation with his attorney. The extraction was rescheduled to May 17, 2023. (*Id.* at ¶ 5). On that day, Dr. Tran observed that Plaintiff's tooth was decayed to the nerve. (*Id.* at ¶ 6). Dr. Tran attempted to extract the tooth but was unable to do so because the roots needed to be loosened. (*Id.*). Plaintiff did not dispute that Dr. Tran suggested that his tooth needed time to loosen before continuing the extraction. (Doc. 45, ¶ 5). He alleges, however, that in his attempt to extract Plaintiff's tooth, Dr. Tran broke it three times. (*Id.*). Dr. Tran prescribed Plaintiff Amoxicillin and Motrin. (Doc. 43, ¶ 6). Motrin is a nonsteroidal anti-inflammatory drug that is

---

[2] Plaintiff either admitted or failed to specifically deny a substantial portion of Defendant's Statement of Material Facts. (*See* Doc. 45, ¶¶ 1-12). Except for facts that are in dispute, the Court will only cite to Defendant's Statement of Material Facts.

used to relieve pain, fever, and inflammation. (Doc. 43, ¶ 9). Amoxicillin is an antibiotic medication used to treat bacterial infections, including odontogenic infections. (Doc. 43, ¶ 11).

Plaintiff saw Dr. Tran for another attempt to extract his upper left wisdom tooth on May 24, 2023. (Doc. 43, ¶ 7). Dr. Tran was unable to safely remove the wisdom tooth, so he referred Plaintiff to an oral surgeon to complete the procedure and prescribed Motrin. (*Id.*). Plaintiff alleges that during that second attempt, Dr. Tran broke Plaintiff's tooth three more times. (Doc. 45, ¶ 5). Plaintiff further pointed to the May 24, 2023, referral, which states that Plaintiff's "crown broke off," and a referral on October 28, 2023, which states that Plaintiff's "#16 tooth broke off at the gumline." (*Id.*). Dr. Tran does not dispute the content of the referrals. (Doc. 45, Doc. 49, pp. 2-3). Dr. Tran saw Plaintiff for a follow-up appointment on July 5, 2023, and refilled his Motrin prescription. (Doc. 43, ¶ 8). Dr. Tran saw Plaintiff on July 12, 2023, for his two-year exam and issued Plaintiff Amoxicillin and Motrin. (Doc. 43, ¶ 10). Plaintiff complained about upper left wisdom tooth pain. (*Id.*). Four x-rays of his mouth were taken, the results of which Plaintiff argues that Defendant failed to disclose (Doc. 45, ¶8).

Plaintiff presented to the healthcare unit on July 25, 2023, with dental pain. (Doc. 43, ¶ 12). A foul smell and plaque buildup were noted, but bleeding and discharge were not. Plaintiff was issued a cold compress and Ibuprofen. (*Id.*). Plaintiff was next seen in the healthcare unit for tooth pain. (Doc. 43, ¶ 13). Tooth decay with no swelling or drainage was noted. (*Id.*). Plaintiff was diagnosed with dentalgia, dental decay, and a tooth fracture. (*Id.*). He was referred again for an oral surgery consultation and was given prescriptions for Clindamycin, Ibuprofen, and Orajel. (*Id.*).[3] Plaintiff was seen by dentist Dr. Mark Jacobson on August 14, 2023, for continued pain in

---

[3] Clindamycin is a medication used to treat bacterial infections, including dental infections. (Doc. 43, at ¶ 14). Ibuprofen is a nonsteroidal anti-inflammatory drug used to relieve pain, reduce fever, and reduce inflammation. (*Id.*

his left upper wisdom tooth. (*Id.* at ¶ 17). He was prescribed Motrin and reminded that he was in line to see the oral surgeon for the extraction of his wisdom tooth. (*Id.*). Thereafter, Plaintiff was seen by nurses in the healthcare unit three times in August and September of 2023, for toothaches. (*Id.* at ¶ 18). No redness or swelling was noted. He was issued a cold compress, Ibuprofen, and Acetaminophen. (*Id.* at ¶¶ 18-19).

Plaintiff was again seen by a nurse in the healthcare unit on September 29, 2023, for a toothache, at which time no swelling was observed, but odor from the upper left jaw was reported. Plaintiff was referred to a dentist. (*Id.* at ¶ 21). Plaintiff was seen on October 2, 2023, by Dr. Jacobson for continued discomfort. (*Id.* at ¶ 22). He was issued Tylenol for his dental pain. (*Id.*). Plaintiff was prescribed Ibuprofen and Amoxicillin on October 10, 2023. (*Id.* at ¶ 23). Plaintiff was seen by oral surgeon Dr. Jay Swanson on October 12, 2023, for his left upper wisdom tooth. Dr. Swanson recommended removing his wisdom tooth. (*Id.* at ¶ 24). Dr. Swanson could not perform the operation because he no longer accepted individuals in custody. (Doc. 45, p. 9). On October 23, 2023, Dr. Tran referred Plaintiff for consultation with another oral surgeon. (*Id.* at ¶ 25). Plaintiff was prescribed Clindamycin on January 3, 2024, as well as Ibuprofen and Orajel on February 23, 2024. (*Id.* at ¶¶ 26- 27).

On February 29, 2024, the referral for Plaintiff's surgical extraction of his upper left wisdom tooth was approved. (*Id.* at ¶ 28). Plaintiff underwent surgical extraction of his upper left wisdom tooth on April 3, 2024. (*Id.* at ¶ 29). Plaintiff was seen by Dr. Jacobson on April 29, 2024, for a post-surgery follow-up appointment. (*Id.* at ¶ 30). He reported no pain or swelling, and his

---

at ¶ 15). Orajel is a topical treatment for the mouth and gums that may help relieve pain associated with minor mouth problems. (*Id.* at ¶ 16).

healing was within normal limits. (*Id.*). Plaintiff has not experienced any complications from his upper left wisdom tooth extraction on April 3, 2024. (*Id.* at ¶ 31).

## **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). Further, a "nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, . . . automatically result in judgment for the movant"; the movant "must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Discussion**

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Brown v. Osmundson*, 38 F.4th 545, 559-60 (7th Cir. 2022) (internal citations omitted). To succeed on his deliberate indifference claims, Plaintiff must "provide evidence, either direct or circumstantial," establishing that "he had an objectively serious medical need," which the defendants knew of but consciously disregarded. *Id.* at 550. Mere negligence, civil objective recklessness, or "medical malpractice do[] not become a constitutional violation merely because the victim is a prisoner." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Rather, the defendant must have exhibited a conduct that approaches "a total unconcern for the prisoner's welfare in the face of serious risks" and is akin to criminal recklessness. *Brown*, 38 F.4th at 550; *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Further, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* Deliberate indifference implies that a defendant's medical judgment was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 395, 396 (7th Cir. 2006); *Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded

Page **6** of **9**

inappropriately to [the plaintiff's] ailments"). Inmates cannot "demand specific care" or "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

At the same time, "receipt of some medical care does not automatically defeat a claim of deliberate indifference" and persistence "in a course of treatment known to be ineffective . . . may support an inference that a medical official recklessly ignored an inmate's serious medical condition." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (citation omitted). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal citation omitted). Further, a provider's "[f]ailure to provide necessary relief and delaying access to a qualified specialist can lead to prolongation of pain" and support a deliberate indifference claim. *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021) (citing *Goodloe v. Sood*, 947 F.3d 1026, 1032 (7th Cir. 2020); *Petties*, 836 F.3d at 731–32; *Conley*, 796 F.3d at 749).

Here, Defendant does not seem to dispute that Plaintiff suffered a serious medical need as to his wisdom tooth. He argues, however, that Plaintiff has failed to put forth any evidence of Dr. Tran being deliberately indifferent to Plaintiff's serious dental need. The Court agrees.

First, the record shows that the decision to attempt an extraction of Plaintiff's left upper wisdom tooth was an exercise of professional judgment. Both Dr. Tran and Dr. Sandhu, who first examined Plaintiff's left upper wisdom tooth and scheduled its extraction on May 8, 2023, agreed that this was the appropriate course of treatment. Likewise, Dr. Tran exercised his professional judgment after the first unsuccessful extraction attempt, deciding to wait for the roots to loosen

before continuing the extraction on May 24, 2023. There is no evidence on the record that Dr. Tran's exercise of professional judgment in attempting to extract Plaintiff's left upper wisdom tooth or attempting a second extraction a week later was blatantly inappropriate. *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017) (noting that a "treatment decision that is based on professional judgment cannot evince deliberate indifference).

Further, Plaintiff has not provided any evidence that Dr. Tran's failure to extract Plaintiff's wisdom tooth twice or the fracturing of Plaintiff's tooth during those attempts amounts to deliberate indifference. *See also Johnson v. Overall*, No. 3:17-CV-460-MAB, 2020 WL 1235653, at *5 (S.D. Ill. Mar. 13, 2020) ("Just because a tooth breaks during the extraction procedure does not mean the dentist provided substandard or constitutionally inadequate care."). Additionally, there is no evidence that Dr. Tran was deliberately indifferent to Plaintiff's pain resulting from the unsuccessful attempts to extract his wisdom tooth. Plaintiff does not dispute that Dr. Tran prescribed Plaintiff pain medication and antibiotics on May 17, 2023, after the first attempted extraction. Dr. Tran renewed Plaintiff's pain medication on May 24, 2023, after the second unsuccessful attempt to extract his tooth, and refilled both his pain medication and his antibiotics on July 5, 2023, and July 12, 2023.

Nor is there any indication of a delay in a referral to a specialist attributable to Dr. Tran. After the second unsuccessful attempt to extract the tooth, Dr. Tran referred Plaintiff to an oral surgeon to complete the procedure. While Plaintiff did not see Dr. Swanson, the oral surgeon, until October 12, 2023, there is no indication that this delay was attributable to Dr. Tran, who was not a regular dentist at Big Muddy River and provided dental services only occasionally. Further, there is no dispute that Plaintiff did not have a surgery for the extraction of his tooth until April 3, 2024. However, Plaintiff explained in his response to the motion that Dr. Swanson was unable to conduct

the surgery in October 2023 because he no longer accepted individuals in custody. Within less than two weeks, on October 23, 2023. Dr. Tran referred Plaintiff to another oral surgeon for a consultation. In sum, even though there was nearly a one-year delay between Dr. Tran's first referral of Plaintiff to an oral surgeon and Plaintiff's extraction surgery, there is nothing in the record suggesting that such a delay was attributable to Dr. Tran.

In sum, the record does not support an inference that Dr. Tran exhibited conduct "approaching a total unconcern" or that his response was "so plainly inappropriate as to permit the inference that [he] intentionally or recklessly disregarded" Plaintiff's needs. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). Accordingly, Dr. Tran is entitled to summary judgment as a matter of law.[4]

### Conclusion

For these reasons, Defendant Tran's Motion for Summary Judgment (Doc. 42) is **GRANTED.** This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED: April 21, 2026**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

[4] Defendant's motion also references Plaintiff's allegation that Dr. Tran was deliberately indifferent to Plaintiff's respiratory issue in February of 2022. (Doc. 43, p. 8). This allegation does not appear in the Complaint or the Court's threshold review, nor does Plaintiff address it in his response to the motion. (Docs. 1, 7, & 45). Accordingly, it does not appear to be relevant to this action, and the Court will not address it.